MICHAEL R. SEVILLE, Esq. SBN 278164
CURTIS L. BRIGGS, Esq. SBN 284190
**SEVILLE BRIGGS, LLP**
3330 Geary Blvd. 3rd Floor, East
San Francisco, CA 94118
Tele: 415-324-8733
michael@sevillebriggs.com
curtis@sevillebriggs.com

VINCENT BARRIENTOS, Esq. SBN 314623
**LAW OFFICE OF VINCENT BARRIENTOS**
3330 Geary Blvd. 3rd Floor, East
San Francisco, CA 94118
Tele: 415-324-8733
vincent@barrientoslaw.com


Attorneys for plaintiff
LISA EPHREM

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA EPHREM, | CASE NO.: 3:20-CV-08680-JCS |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, VIOLATION OF FEDERAL TORT CLAIMS ACT, AND DAMAGES |
| v. | |
| THE UNITED STATES OF AMERICA (USA); JERON HARRIS individually and in his official capacity as Correctional Officer for the USA and Federal Bureau of Prisons; DOCTOR F. DAVIS individually and in his official capacity as Chief Psychologist for the USA and Federal Bureau of Prisons; and DOES 1-50. | **JURY TRIAL DEMANDED** |
| Defendants. | |

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

## INTRODUCTION

1. This case arises out of a conspiracy by multiple employees of the Federal Bureau of Prisons, to silence and punish Ms. Ephrem for reporting a sexual assault perpetrated against her by Federal Bureau of Prisons' employee Jeron Harris.

2. On or about August 2017, Mr. Harris sexually assaulted Ms. Ephrem, placing his hand on Ms. Ephrem's buttocks and cupping her breast. Prior to this date, Mr. Harris had repeatedly sexually verbally harassed Ms. Ephrem and other female inmates under Mr. Harris's supervision.

3. Ms. Ephrem subsequently filed a complaint under the Prison Rape Elimination Act (hereinafter referred to as "PREA") and notified multiple prison staff employees of the incidents. In response, prison officials violated multiple PREA protocols and executed a coordinated effort to punish Ms. Ephrem in a series of retaliatory actions. Prison officials completely ignored her first PREA complaint, failed to separate Ms. Ephrem from her abuser, and notified her abuser of her PREA complaint against him, all the while Ms. Ephrem lived in constant fear of another attack or worse.

4. After her first PREA complaint was ignored by prison officials for a year and the sexual harassment continued, Ms. Ephrem filed a second PREA complaint. In response, she was fired without cause from her prison job in the trust fund commissary. Then she was transferred from the Dublin Federal Correctional Institution, a low-level "camp" type of prison, to a high security facility, the SeaTac Federal Detention Center, after Ms. Ephrem had already been approved to transfer to a half-way house. This intentional act to punish Ms. Ephrem changed her custody status thereby increasing her release date by over four months despite having no write ups or other reasons for the transfer.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

5. On June 28, 2019, the National Inmate Appeals denied Ms. Ephrem's claim under PREA, asserting that Ephrem's claims were now moot because she had been transferred to a different prison from where the sexual assault occurred.

6. As a result of the coordinated acts of the above-named defendants, Ms. Ephrem suffers from symptoms of Posttraumatic Stress Disorder, and severe anxiety such that it impacts her ability to function on a daily basis.

7. Plaintiff brings this Complaint seeking to recover for general, special and punitive damages, including reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law. This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant United States of America, for money damages, accruing on or after January 1, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

9. Plaintiff has exhausted all administrative remedies pursuant to the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671.  On June 28, 2019, the National Inmate Appeals denied Plaintiff's complaint under PREA, asserting that Plaintiff's claims were now moot because she had been transferred to a different prison from where the sexual assault occurred. On June 28, 2019, Plaintiff's claims accrued for purposes of the FTCA statute of limitations.

10. Jurisdiction founded upon the federal law is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq. 4. Pursuant to the FTCA, 28 U.S.C. § 2671, et. seq., the Plaintiff on or about December 19, 2019, presented her claim to the appropriate federal agency for administrative settlement under the FTCA requesting $1,000,000.00. On letter dated January 21, 2020, Plaintiff's claim was denied for all time prior to December 30, 2017 and accepted for personal injury that occurred from December 31, 2017 to December 19, 2019 in writing by the Western Regional Office of the Federal Bureau of Prisons (Claim #TRT-WXR-2020-02148). This letter also stated that the agency had up to six months to make a final determination of Plaintiff's administrative claim for damages. Six-months later, on July 21, 2020, the agency did not provide a response denying or accepting Plaintiff's claim. This lawsuit was then timely filed.

11. Jurisdiction is further founded upon Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

12. This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual and this action was filed within six months of June 27, 2020, the six-month period in which the FBP could have responded. They did not respond.

13. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as the events or omissions giving rise to the claims occurred in this judicial district.

### **PARTIES**

14. Plaintiff Lisa Ephrem (hereinafter referred to as "PLAINTIFF") is at all times herein mentioned a citizen of the United States and a resident of Clackamas County in Oregon. PLAINTIFF was a former inmate in the Federal Department of Corrections.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

15. Defendant United States of America (hereinafter referred to as "USA" individually, or "DEFENDANTS" collectively) is subject to suit for personal injury caused by negligent and wrongful acts and omissions of employees of the Government while acting within the scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the Federal Tort Claims Act.

16. Defendant Jeron Harris (hereinafter referred to as "HARRIS" individually, or "DEFENDANTS" collectively) was, at the time of the incidents, an employee of Dublin Federal Correctional Institution (herein after referred to as "DFCI") and Federal Bureau of Prisons (herein after referred to as "FBOP") as a correctional officer and trust fund worker. It is currently unknown to Plaintiff whether HARRIS is still employed at DFCI or by the FBOP.

17. Defendant Doctor F. Davis (hereinafter referred to as "DAVIS" individually, or "DEFENDANTS" collectively) was, at the time of the incidents, an employee of DFCI and FBOP as the chief psychologist. DAVIS is still employed by the FBOP at Federal Correctional Institution Otisville.

18. PLAINTIFF is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. PLAINTIFF will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFF believes and alleges that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their negligence, breach of duty, and negligent supervision. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. PLAINTIFF will ask to leave to amend her complaint subject to further discovery.

**FACTUAL ALLEGATIONS**

19. On February 18, 2016, PLAINTIFF self-surrendered to DFCI to begin a 51-month sentence for convictions related to mail fraud and identity theft.

20. On or about August 2017, PLAINTIFF began working in the commissary department of the DFCI camp, where she was in daily contact with her abuser, HARRIS, employed by the DFCI.

21. During the first few weeks of working in the commissary, PLAINTIFF overheard HARRIS making sexual comments to other female inmates.

22. On or about the beginning of September 2017, HARRIS started making lude sexual comments directly to PLAINTIFF. For example, "you have a lot of ass for a white girl," among other inappropriate and unsolicited comments.

23. PLAINTIFF never flirted with HARRIS or provided him with any sort of interaction that could be interpreted as consensual.

24. HARRIS also would command PLAINTIFF to bend over, and then position himself behind her, so he could look at her buttocks while making sexual comments.

25. HARRIS would purposely drop boxes and ask PLAINTIFF to pick up the dropped boxes so he could look at her buttocks. If PLAINTIFF did not immediately pick up the intentionally dropped boxes or resisted, HARRIS would call PLAINTIFF "fat and lazy," and tell her that her thighs looked like sausages in her tight pants. When PLAINTIFF voiced her discomfort with his vulgar comments, HARRIS would reply with comments like, "Fuck you! Who do you think you are? You're a thief and that's why you're here!"

26. On or about October 2017, while working in the "cage" where the commissary is stored, HARRIS, without notice, approached PLAINTIFF from behind and began to grab and feel on her buttocks. PLAINTIFF told him to stop but HARRIS refused to stop and told her, "What are you going to do?" Continuing the sexual assault, HARRIS next slid his hand inside PLAINTIFF's shirt and cupped her breast. HARRIS then put a finger over his own

6
FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

mouth indicating to PLAINTIFF to be quiet. HARRIS further told PLAINTIFF that, "you say anything and I'll have you out of here," meaning if she reported the sexual assault, PLAINTIFF would be shipped from low-security DFCI, to a higher security prison. This incident went on for approximately 45 seconds. The sexual assault only stopped because HARRIS heard someone enter the warehouse and he did not want to get caught in the act.

27. Within a few days of the sexual assault, PLAINTIFF was approached by HARRIS's supervisor, Andrea Giles, to discuss his behavior toward the other female inmates. In their conversation, Giles said, "He is a PREA case waiting to happen." After Giles made that statement, PLAINTIFF broke down in tears and confided in Giles that HARRIS had been consistently harassing her verbally and had recently sexually assaulted her. Giles told PLAINTIFF that she needed to file a PREA complaint.

28. Although PLAINTIFF was terrified that HARRIS would discover that she was filing a PREA complaint against him, PLAINTIFF filed the complaint at the assurance of Giles that HARRIS would never find out PLAINTIFF filed the complaint against him. Giles assured PLAINTIFF that she would be protected and no retribution would be administered against her for asserting her rights under PREA.

29. Relying on the assurances of Giles, PLAINTIFF filed her first PREA complaint on or about October 2017.

30. After her first PREA complaint was filed, the DFCI did not follow the PREA guidelines. PLAINTIFF was not separated from her abuser, HARRIS. No welfare checks were conducted by prison officials regarding PLAINTIFF's safety from HARRIS.

31. Left unprotected and abandoned by the DFCI, PLAINTIFF did everything possible within her power to protect herself. PLAINTIFF was fearful that she would be sexually assaulted again or worse because the verbal sexual assault continued on an almost daily basis because HARRIS was allowed to continue his duties working with the female inmates that he sexually harassed.

32. Over the next ten months, PLAINTIFF contacted regional federal prison offices, lawyers, trauma centers, the Federal Bureau of Investigations, the Attorney General's

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

Office, the Inspector General's Office and other entities begging for help but received none. PLAINTIFF contemplated ending her life on several occasions.

33. Finally, on or about August 6, 2018, in response to PLAINTIFF's cry for help, Carolyn Staehle from Tri-Valley Haven located in Livermore, visited DFCI on behalf of PLAINTIFF. Associate Warden Tamara Mischel denied Staehle's admittance into the prison and told her, "that she will deal with her (referring to PLAINTIFF)."

34. Shortly after Staehle's attempted visit, DAVIS, the chief psychologist, visited PLAINTIFF and confronted her about why she had contacted Tri-Valley Haven. Afraid that she would be punished, PLAINTIFF told DAVIS about the sexual assault and harassment inflicted upon her by HARRIS and the fact that nothing had been done about it including DFCI outright ignoring her PREA complaint in violation of PREA law and protocol.

35. PLAINTIFF subsequently discovered that DFCI officials chose to ignore her first PREA complaint altogether when Mischel visited PLAINTIFF and told her that nothing would be done regarding her PREA complaint because, "it's a he-said, she-said thing."

36. Shortly after this conversation, Associate Warden John LeMaster met with HARRIS in the DFCI warehouse to inform HARRIS that PLAINTIFF had filed a PREA complaint against him. Revealing PLAINTIFF's identity to her attacker is a direct violation of PREA guidelines highlighting that the DFCI had no regard for the safety or concerns of PLAINTIFF or the law under PREA.

37. PLAINTIFF learned from other female inmates that HARRIS was furious upon learning about the PREA complaint against him. PLAINTIFF wrote to Mischel and DAVIS about the revelation but received no response and was ignored again.

38. Between August 2017 and August 2018, HARRIS continued to verbally sexually harass PLAINTIFF on an almost daily basis.

39. On or about August 2018, PLAINTIFF filed a second PREA complaint because DFCI prison officials had dismissed her first request.

40. On or about August 21, 2018, commissary supervisor Stephen Dewitt, fired PLAINTIFF from her work position in the prison commissary as retaliation from prison

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

officials for her filing the second PREA complaint. The retaliatory firing was confirmed by a female inmate who overheard a conversation between HARRIS and inmate counselor Selena Rhaney, regarding PLAINTIFF being fired for filing the complaint.

41. PLAINTIFF subsequently asked Rhaney for a BP-9 form, an administrate remedy form, so that she could document the retaliatory firing. Rhaney asked PLAINTIFF, "what for?" PLAINTIFF said she wanted to document the second PREA compliant against HARRIS because the first PREA complaint had been ignored by prison officials. Rhaney looked at PLAINTIFF and said, "Child, do you want him to lose his job?" Rhaney refused to provide PLAINTIFF with the appropriate Administrative Remedy forms. PLAINTIFF confronted Rhaney about the retaliatory firing and requested to speak with the warden. Instead, Rhaney contacted DAVIS who verified the retaliatory firing. In an attempt to remedy the retaliatory firing, DAVIS called the new trust fund supervisor, Mrs. Weaver, and PLAINTIFF was reinstated at her commissary job.

42. Although PLAINTIFF was briefly reinstated in her job, the retaliation by DFCI against PLAINTIFF was just beginning. On or about August 30, 2018, PLAINTIFF was told by Mischel that she was being transferred to another prison. PLAINTIFF had already signed paperwork to be transferred to a half-house in January 2019 but she was assured that she would still be placed into a half-way house in a few months. Instead, PLAINTIFF was transferred to a high security facility, Federal Detention Center Seatec (hereinafter referred to as "SEATEC"). This is despite having served 30 months of her sentence at the low-level security "camp" DFCI and receiving no write ups for any violations.

43. DAVIS and PLAINTIFF's case manager, Alex Chavez, had intentionally changed PLAINTIFF's custody status to a higher level rendering her ineligible for camp type custody.

44. This retaliatory act by DFCI, changed PLAINTIFF's release date, increasing the length of her in custody sentence by four months, and deprived her of seeing her mother before she died and from seeing her then seven year-old son.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

45. While at SEATEC, prison officials denied PLAINTIFF's emergency furlough request to visit her dying mother because PLAINTIFF's custody level was "too high" which was caused solely by DFCI transferring PLAINTIFF to SEATEC without cause.

46. PLAINTIFF's mother died on or about May 9, 2019. PLAINTIFF was not allowed to say good bye to her mother because DEFENDANTS changed her custody status to retaliate against her.

47. On May 17, 2019, PLAINTIFF was released from SEATEC into a halfway house, the Northwestern Regional Reentry Center (hereinafter referred to as "NWRRC") in Portland, Oregon, approximately four months later than her original release date.

48. PLAINTIFF had no incident reports or write ups while in custody.

49. After two years, and two separate PREA complaints, DEFENDANTS still had not ruled on PLAINTIFF's PREA complaints. After two years, no action was taken on behalf of DEFENDANTS to protect PLAINTIFF from HARRIS, or protect the countless other female inmates that DEFENDANTS had implicitly granted HARRIS permission to sexually assault and harass.

50. On June 28, 2019, Ian Connors, Administrator for National Inmate Appeals, wrote to PLAINTIFF stating in summary that the issues PLAINTIFF had repeatedly raised were now moot because she had been transferred to the NWRRC.

51. On or about September 30, 2019, PLAINTIFF was released from the NWRRC to serve the rest of her term on probation.

52. PLAINTIFF suffers from symptoms of Posttraumatic Stress Disorder, and serve anxiety such that it impacts her ability to function on a daily basis.

## **DAMAGES**

53. PLAINTIFF was physically, mentally, and emotionally injured as a direct and proximate result of the intentional and negligent acts of DEFENDANTS.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

54. PLAINTIFF is entitled to recover damages pursuant to pain and suffering she endured as a result of her rights being violated.

55. PLAINTIFF found it necessary to engage the services of private counsel to vindicate the rights of PLAINTIFF under the law. PLAINTIFF is therefore entitled to an award of costs and/or attorney's fees pursuant to statute(s) in the event that she is the prevailing party in this action under the Federal Tort Claims Act, Bivens Claims, and 42 U.S.C §1988.

## FIRST CAUSE OF ACTION
### (Conspiracy)
### (Violation of 42 U.S.C §1985)
(Against all Defendants)

56. PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

57. Between approximately August 2017 through May 2019, DEFENDANTS conspired to unjustifiably punish PLAINTIFF for filing two separate PREA complaints against her abuser, HARRIS.

58. DEFENDANTS cumulative actions evidence an agreement and coordinated effort to deny PLAINTIFF's rights under PREA, in order to protect HARRIS for his tortuous acts and DEFENDANTS' numerous PREA violations.

59. DEFENDANTS had knowledge that HARRIS had sexually assaulted PLAINTIFF when PLAINTIFF filed her first PREA complaint, yet DEFENDANTS intentionally chose to violate PREA guidelines including failing to separate her from her abuser, notifying her abuser of her PREA complaint, and intentionally ignoring PLAINTIFF's first PREA complaint altogether.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

60. DEFENDANTS conspired to deprive PLAINTIFF of equal protection under the laws by firing her from her work position, failing to separate her from her abuser, notifying her abuser of her PREA complaint, and refusing to give PLAINTIFF access to her rights under PREA.

61. In order to further protect HARRIS, Mischel denied Staehle's visit to PLAINTIFF to investigate her PREA complaint which is in violation of PREA guidelines.

62. Dewitt fired PLAINTIFF from her work position in the commissary room after PLAINTIFF filed her second PREA complaint.

63. Slowly realizing that PLAINTIFF would not go quietly and PLAINTIFF would continue to fight for her rights under PREA, DEFENDANTS transferred PLAINTIFF to a high-level security prison after she had already been approved a transfer to a low-security half-way house, denying PLAINTIFF equal protection of the laws.

64. This and any many other acts show that DEFENDANTS had an agreement, to protect HARRIS from PLAINTIFF's PREA complaint and to punish PLAINTIFF for filing the PREA complaints, and took calculated steps along the way in furtherance of that agreement.

65. Ultimately, two years after the sexual assault occurred, DEFENDANTS never even ruled on her PREA complaints asserting that since she was now residing in a halfway house her issues were now moot.

66. PLAINTIFF suffered and still suffers from Posttraumatic Stress Disorder and severe emotional distress as a direct result of DEFENDANTS' acts and omissions.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

//

//

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

## SECOND CAUSE OF ACTION
### (Bivens Action: Violation of Eighth Amendment of the United States Constitution)
(Against HARRIS, DAVIS, DOES 1-50)

67. PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

68. PLAINTIFF has a constitutionally protected right to be free of cruel and unusual punishment.

69. DEFENDANTS' acting under color of federal authority violated that right when having knowledge of HARRIS sexually assaulting PLAINTIFF, DEFENDANTS intentionally chose to violate PREA protocol by notifying HARRIS of the PREA claim against him, denying PLAINTIFF of Staehle's visit, allowing HARRIS to continue working with PLAINTIFF, refusing to investigate the first PREA complaint, and after two years not ruling on either PREA complaint.

70. Further, DEFENDANTS decided to silence and punish PLAINTIFF by transferring her to a high-security prison despite her already being approved for transfer to a halfway house. This deprived her of seeing her mother before she passed and she had to spend an extra four months in custody away from her son.

71. DEFENDANTS acted with deliberate indifference based on the repeated filings of complaints and requests for help from PLAINTIFF, that were ultimately ignored by DEFENDANTS.

72. PLAINTIFF lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, and an appropriate remedy, namely damages, can be imposed.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

**THIRD CAUSE OF ACTION**
**(Bivens Action: Violation of Fifth Amendment of the United States Constitution)**
(Against HARRIS, DAVIS, DOES 1-50)

73.   PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

74.   PLAINTIFF was deprived of life, and liberty without due process of law when DEFENDANTS ignored and dismissed PLAINTIFF's first PREA complaint, and failed to decide on her second PREA complaint.

75.   PLAINTIFF exhausted all administrative remedies prior to filing her PREA complaints and was provided no relief from DEFENDANTS.  PLAINTIFF was denied her rights under PREA and never received a ruling on her PREA complaints until she was transferred to SEATEC.

76.   DEFENDANTS conspired and acted in a coordinated effort to punish PLAINTIFF for filing a PREA complaint against HARRIS for sexually assaulting her by denying PLAINTIFF her rights under PREA.

77.   PLAINTIFF lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, and an appropriate remedy, namely damages, can be imposed.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

**FOURTH CAUSE OF ACTION**
**(Bivens Action: Violation of First Amendment of the United States Constitution)**
(Against HARRIS, DAVIS, DOES 1-50)

78.   PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

14
FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

79. DEFENDANTS prohibited PLAINTIFF from seeking help from outside resources, namely denying Staehle from Tri-Valley Haven from visiting PLAINTIFF to follow up on her first PREA complaint being ignored, thereby denying her of her rights under the First Amendment of the United States Constitution.

80. PLAINTIFF lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, and an appropriate remedy, namely damages, can be imposed.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

**FIFTH CAUSE OF ACTION**
**(Federal Tort Claims Act: Assault)**
(Against Defendant United States)

81. PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

82. Defendant USA caused PLAINTIFF to fear further sexual assault because on or about October 2017, HARRIS sexually assaulted PLAINTIFF by placing his hand on her buttock and breast. DEFENDANTS, having knowledge of the sexual assault from the first PREA complaint filed by PLAINTIFF, did nothing to punish HARRIS, remedy the harm, institute preventative measures to stop future harm, and DEFENDANTS even refused to acknowledge PLAINTIFF's initial PREA complaint because they did not want HARRIS to lose his employment position.

83. HARRIS sexually assaulted PLAINTIFF without cause. Defendants' conduct was neither privileged nor justified under statute or common law.

84. As a result of DEFENDANTS' acts and omissions, PLAINTIFF was in fact, placed in great apprehension of imminent harmful and offensive contact with her person.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

85. At no time did PLAINTIFF consent to any of the acts by DEFENDANTS as alleged hereinabove.

86. DEFENDANTS' conduct as described above, caused PLAINTIFF to be apprehensive that DEFENDANTS would subject her to further intentional invasions of her right to be free from offensive and harmful contact and demonstrated that at all times herein, DEFENDANTS had a present ability to subject her to an intentional offensive and harmful touching.

87. As a direct and proximate results of Defendants' unlawful conduct as alleged hereinabove, PLAINTIFF has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm.

88. Defendant USA is legally responsible for such action under the FTCA.

89. PLAINTIFF has a right to be free from unwanted or unwarranted contact with her person and this right was violated by DEFENDANTS' action or omissions, inclusive.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

### SIXTH CAUSE OF ACTION
**(Federal Tort Claims Act: Battery)**
(Against Defendant United States)

90. PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

91. HARRIS intended to cause harmful and offensive contact to PLAINTIFF, when he perpetrated a horrific sexual attack on PLAINTIFF by intentionally placing his hands on her breast and buttocks against her will and without her consent.

92. HARRIS then placed a single finger over his mouth communicating to PLAINTIFF that she must remain silent about the disgusting assault.

16
FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

93. Defendant HARRIS was employed by defendant USA during the sexual assault and as such USA is legally responsible for such action under the FTCA.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

**SEVENTH CAUSE OF ACTION**
**(Federal Tort Claims Act: Intentional Infliction of Emotional Distress)**
(Against Defendant United States)

94. PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

95. DEFENDANTS, and DOES 1-50 perpetrated a coordinated attack on PLAINTIFF intending to silence and punish her for asserting her rights under PREA.

96. DEFENDANTS knew that HARRIS had repeatedly sexually harassed women and likely knew that he had sexually assaulted other female inmates.

97. DEFENDANTS were made aware the HARRIS sexually assaulted PLAINTIFF when she told GILES about the sexual assault that occurred on or about October 2017, and she filed her first PREA complaint shortly thereafter.

98. DEFENDANTS having knowledge that HARRIS sexually assaulted PLAINTIFF, intentionally ignored PLAINTIFF's first PREA complaint because they wanted to protect HARRIS' employment position.

99. DEFENDANTS then violated multiple PREA provisions including investigating the PREA complaint and more alarming, notifying the offending party, HARRIS, that a complaint had been filed against him by PLAINTIFF.

100. During this time HARRIS, undeterred by the threat of punishment because he knew prison officials and staff would protect him, continued to sexually harass PLAINTIFF.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

101. PLAINTIFF subsequently filed a second PREA complaint because the DFCI administration refused to acknowledge her first PREA complaint.

102. In retaliation, DEFENDANTS then fired PLAINTIFF from her work position within the DFCI and transferred PLAINTIFF to a high-security prison to punish HARRIS for asserting her rights under PREA. This was after PLAINTIFF had already been housed at DFCI, a low-level "camp" type prison, and PLAINTIFF had already been approved to be transferred to a half-way housing facility shortly thereafter.

103. DEFENDANTS acted intentionally and recklessly in violating PREA protocol because they knew not only from PLAINTIFF, but from other female inmates, that HARRIS had been sexually harassing inmates. This is confirmed by GILES who told PLAINTIFF, that HARRIS is a PREA case waiting to happen.

104. DEFENDANTS' conduct was extreme and outrageous because PLAINTIFF should not have been punished by the DEFENDANTS for simply reporting a sexual assault to DEFENDANTS. Further, a reasonable person would know that if they were sexually assaulted and then forced to continue working with their attacker and had no recourse or avenue for protection, that the most likely outcome would be severe emotional trauma with long lasting effects. DEFENDANTS' retaliatory actions and conduct caused PLAINTIFF severe emotional distress including Posttraumatic Stress Disorder and severe anxiety which impact her ability to function on a daily basis.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

//

//

//

//

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

## EIGHTH CAUSE OF ACTION
### (Federal Tort Claims Act: Negligence)
(Against Defendant United States)

105.  PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

106.  In the alternative, PLAINTIFF alleges DEFENDANTS' negligent actions and/or negligent failure to act within the scope and course of their employment, as set forth herein-above approximately caused severe physical injury to PLAINTIFF.

107.  DEFENDANTS owed a duty to PLAINTIFF to protect her from sexual assault and ensure PLAINTIFF access to her rights under the constitution and PREA.

108.  DEFENDANTS breached that duty when they ignored PLAINTIFF's first PREA complaint, allowed the near daily sexual harassment to continue by permitting HARRIS to continue to working with PLAINTIFF, and instead of addressing PLAINTIFF's second PREA complaint, DEFENDANTS shipped PLAINTIFF off to a high security prison adding four additional months to PLAINTIFF's sentence.

109.  DEFENDANTS' breach of duty was the cause of PLAINTIFF's injuries because DEFENDANTS knew that HARRIS had sexually assaulted PLAINTIFF yet DEFENDANTS continued to allow HARRIS to work with PLAINTIFF thereby allowing the abuse to continue.

110.  As an actual and proximate result of said DEFENDANTS' negligence, and emotional distress sustained by PLAINTIFF, PLAINTIFF has sustained severe emotional trauma and anxiety.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

## NINTH CAUSE OF ACTION
### (Federal Tort Claims Act: Negligent Infliction of Emotional Distress)
(Against Defendant United States)

111.   PLAINTIFF incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

112.   In the alternative, PLAINTIFF alleges DEFENDANTS' negligent actions and/or negligent failure to act within the scope and course of their employment, as set forth herein-above caused severe physical injury and serious emotional distress to PLAINTIFF.

113.   DEFENDANTS' negligence was a substantial factor in causing PLAINTIFF serious emotional distress including both physical and emotional suffering, fright, nervousness, anxiety, worry, shock, humiliation, and shame.

WHEREFORE, PLAINTIFF prays for damages herein set forth.

## JURY DEMAND

PLAINTIFF hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, PLAINTIFF prays for relief, as follows:

1.   For general damages in a sum to be determined according to proof;

2.   For special damages, including but not limited to medical expenses and other special damages in a sum to be determined according to proof;

3.   For punitive and exemplary damages against DEFENDANTS in amounts to be determined according to proof;

4.   For reasonable attorney's fees pursuant to case law and statutes.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES

5. For any and all statutory damages allowed by law;

6. For cost of suit herein incurred; and

7. For such other and further relief as the Court deems just and proper.


DATED: March 3, 2021                    LAW OFFICE OF VINCENT BARRIENTOS

                                                ___/s/Vincent Barrientos_____
                                                Vincent Barrientos
                                                Attorney for Plaintiff

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FTCA & DAMAGES